# Exhibit C

(GIK)

$k$-04-05

**KDW 11/01/04**

# Project Management Service Agreement

This **PROJECT MANAGEMENT SERVICESAGREEMENT** (the "Agreement") is made as of the 11th day of February, 2004

between

**New Songdo City Development Limited Liability Company ("NSC"),**
a Korean limited liability company with a mailing address of:

9th Floor, Samwhan Building
98-5 Unni-Dong
Chongro-Ku
Seoul, Korea 110-742
Facsimile No.:
E-mail:

and

**Gale International (Korea), LLC ("GIK"),**
a Korean limited liability company with a mailing address of:

9th Floor, Samwhan Building
98-5 Unni-Dong
Chongro-Ku
Seoul, Korea 110-742
Facsimile No.:
E-mail:

For the following **Project**:

the development known as "New Songdo City," in Incheon Metropolitan City, Korea, as depicted in the "Modified MPD" attached as Exhibit A to the Accelerated Closing Agreement, dated as of January 15, 2003, by and between NSC and Incheon Metropolitan City (the "**City**").

NSC will develop the Project in phases, each of which may consist of the permitting, design, engineering, construction and operation of one or more buildings (each, a "**Phase**"). As each Phase is undertaken by NSC, NSC and GIK will execute an addendum to this Agreement that will set forth the approved development plan and Development and Construction Budget (as defined in subparagraph A of Article 4) approved by NSC and the City (as applicable) for such Phase. NSC and GIK acknowledge and agree that (i) NSC intends to transfer to a separate unit or subsidiary (each, a "**Sub-Project Owner**") necessary project resources to develop and construct a building or other facility (each, a "**Sub-Project**"), (ii) GIK intends to establish a separate unit or subsidiary (each, a "**Sub-Project Developer**") to undertake the development activities with respect to each Sub-Project, (iii) NSC shall cause each Sub-Project Owner to execute a separate development agreement with a Sub-Project Developer for the development of each Sub-Project (consistent, as applicable, with the provisions contained herein, including, without limitation, the obligation of the Sub-Project Owner to pay the Sub-Project Developer a development fee equal to three percent (3%) of the Project Costs associated with such Sub-Project), and (iv) consistent with the foregoing, references herein to NSC shall include the relevant Sub-Project Owner as applicable, references herein to GIK shall include the relevant Sub-Project Developer as applicable, and references herein to a Phase shall include the relevant Sub-Project as applicable.

NSC and GIK agree as follows:

## ARTICLE 1    ENGAGEMENT

NSC hereby engages GIK as NSC's exclusive agent to pursue on NSC's behalf the acquisition, design, permitting, marketing, financing, development and construction supervision of the Project, and to represent NSC in all matters and proceedings before the City, the Free Economic Zone Authority (the "**FEZ Authority**") and all other parties in connection with the Project, upon the terms hereinafter set forth. GIK hereby accepts such engagement. GIK agrees, in the performance of its obligations under this Agreement, to act diligently and in the best interests of NSC and with appropriate professional skill.

## ARTICLE 2    TERM

The term of this Agreement will commence on the date of the full execution of this Agreement and last until the completion of all Phases of the Project, unless earlier terminated pursuant to Article 7.

## ARTICLE 3    SCOPE OF SERVICES

GIK will be responsible for providing the services set forth in this Article 3 (the "**Work**") in connection with the Project.   NSC will provide decisions and approvals in a timely manner consistent with the critical path schedules agreed upon by NSC and GIK, as provided in subparagraph B.5 of this Article 3.   GIK will consult with NSC closely throughout the execution of the Work, and will provide such information as may be reasonably required by NSC.

NSC will retain the right to approve all elements of the acquisition, design, permitting, marketing, financing, development and construction of the Project.

GIK will have the following powers and will discharge the following duties in completing the Work:

A.    Site Acquisition.    GIK will coordinate the acquisition of Phases of the Project as directed by NSC, and will represent NSC in all matters and proceedings with the City, the FEZ Authority and all other parties with respect to such acquisitions.

B.    Planning and Design; Permitting.    With respect to the Project and each Phase thereof, GIK will:

1.    Select and coordinate the services of architects, surveyors, engineers, legal counsel and such other professional consultants as may be required for the design and layout of the Project (including, without limitation, such design and layout included in the master plan, the land engineering plan and the district unit plan for the Project) and each applicable Phase, negotiate and administer contracts for such services on behalf of NSC, on terms approved by NSC.

2.    Participate in conferences with NSC and professional consultants regarding design of the Project (including, without limitation, the master plan, the land engineering plan and the district unit plan for the Project) and each applicable Phase, in order to arrive at improvements to the design, efficiency and cost of the Project and such Phase.

about:blank                                                                                                    2/20/2019

3. Coordinate with all necessary governmental agencies (including, without limitation, the City and all applicable Central Government agencies) to seek to secure all permits and approvals required for the Project (including, without limitation, permits and approvals required to give effect to the master plan, the land engineering plan and the district unit plan for the Project) and each applicable Phase.

4. Coordinate and advise NSC regarding approval of schematic, design development and final plans and specifications.

5. Prepare for NSC a critical path schedule and periodic updates thereto to reflect any material changes to the schedule, other design or construction cost estimates as requested by NSC and financial accounting reports on a cash basis. Such reports will include, for the relevant period:

a. an estimate of the amounts constituting costs payable in connection with the Project and each applicable Phase during the succeeding calendar quarter;

b. miscellaneous costs incurred to the date of the report, such as legal fees and advertising and public relations expenditures; and

c. a comparison of the design and construction portions of the Development and Construction Budget (as defined in subparagraph A of Article 4) with actual expenditures incurred for design and construction.

6. Provide *pro forma* financial statements for the Project and each applicable Phase detailing the projected costs and revenue to be derived therefrom and periodic updates thereto to reflect any material changes in projected costs and revenues, based upon the designs and schedules prepared by GIK and approved by NSC from time to time pursuant to this subparagraph B of Article 3.

C. Construction. With respect to the Project and each Phase thereof, GIK will:

1. Negotiate and administer on behalf of NSC construction management and general construction contracts for the construction of the Project and each applicable Phase with POSCO Engineering & Construction Co., Ltd. ("**POSCO E&C**"), or another constructor acceptable to NSC, as the case may be, on terms approved by NSC.

2. Prepare and submit to NSC periodic updates to the critical path schedule referred to in subparagraph B.5 of this Article 3 to reflect material changes thereto.

3. Obtain performance and payment bonds or letters of credit on behalf of NSC, on terms approved by NSC, as directed by NSC or as required by any construction lender.

4. Obtain or cause to be obtained all building and other City and Central Government permits which are required to be obtained by NSC for construction of the Project and each applicable Phase on behalf of NSC, on terms approved by NSC.

5. Submit changes in the plans for the Project and each applicable Phase to NSC for NSC's approval; provided that GIK will have the authority to approve changes in plans with a cost under US$250,000 individually, and under $2,000,000 in the aggregate for each Phase, without NSC's approval.

6. Prepare a list of all subcontractors and material suppliers.

7. Obtain and maintain insurance coverage, general liability, builder's risk, fire and extended coverage and fidelity insurance on behalf of NSC, on terms approved by NSC.

8. Assure compliance with, and coordinate disbursements under, any loan agreements with any lending institutions providing funds for the construction of the Project and each applicable Phase on behalf of NSC, on terms approved by NSC.

D. Marketing. GIK will develop a marketing strategy for the Project and each Phase of the Project, in consultation with NSC, and will be responsible for implementing the applicable marketing strategy, including, without limitation, the negotiation and administration of agreements on behalf of NSC with consultants and other professionals providing marketing services in connection with the Project and each applicable Phase, on terms approved by NSC.

E. Financing. GIK will develop a financing strategy for the Project and each Phase of the Project, in consultation with NSC, and will be responsible for implementing the applicable financing strategy approved by NSC, including, without limitation, obtaining and negotiating on behalf of NSC term sheets, applications and commitment letters for acquisition, construction and permanent financings for the Project and each Phase.

F. Other Powers and Duties: With respect to the Project and each Phase thereof, GIK will, on behalf of NSC:

1. Pay all taxes, assessments and other impositions applicable to the Project and each applicable Phase.

2. Pay all debts and other obligations of NSC relating to the Project and each applicable Phase as approved by NSC, including the amounts due under any land acquisition loan, construction loan, permanent loan or other loan to NSC previously approved by NSC.

3. Evaluate and pay requests for payments under architectural agreements, construction contracts and any other agreements with consultants.

4.    Pay all other costs and expenses identified in this Agreement or in an approved budget as a cost or expense of NSC in connection with the Project or a Phase.

5.    File on behalf of NSC any notices of completion required or permitted to be filed upon the completion of any portion of the Project and each applicable Phase and take such actions as may be required to obtain any certificates of occupancy or equivalent documents required to permit the occupancy of the Project and each applicable Phase or any portion thereof.

6.    Hire and retain as employees or agents of GIK and not as employees of NSC, such personnel as may be required to properly perform Developer's duties and responsibilities hereunder.

7.    Prepare the budgets and reports required pursuant to Article 4.

G.    Commencement of the Work.    The Work will commence upon the full execution of this Agreement.

H.    Execution of Agreements.    GIK shall not have the authority, pursuant to this Agreement or otherwise, to execute any agreement on behalf of NSC.    In order to be binding upon NSC, any and all agreements shall be executed by a duly authorized representative of NSC, which shall include the Representative Director of NSC and persons (who may be officers of GIK) acting pursuant to powers of attorney granted by NSC.

I.    Competitive Bids.    In selecting professional consultants and other vendors for the Project or any Phase, GIK will obtain competitive bids for such work as and to the extent directed by NSC.

J.    Payments.    Any obligation of GIK in this Agreement to make payments on behalf of NSC will be contingent upon the availability of funds of NSC to make such payment.

K.    Subcontracting.    GIK shall have the right at any time to outsource or subcontract any of the Work to responsible third parties, provided, that such outsourcing or subcontracting shall in no way diminish or affect GIK's obligations hereunder.

## ARTICLE 4    BUDGETS; REPORTS AND OPERATING ACCOUNTS

A.    Budgets.    As soon as practicable after preliminary schematic drawings for each Phase of the Project have been prepared, and in any event prior to commencement of construction, GIK will prepare and submit to NSC for its review and approval a development and construction budget (the **"Development and Construction Budget"**) for such Phase, including contingencies and reserves, together with the sources of all funds NSC has estimated to be

about:blank    2/20/2019

available for the payment of such costs when due, including anticipated construction loan disbursements and any income or receipts from the Project and each applicable Phase. GIK will update the budget annually, or more frequently whenever any material change occurs in the items set forth therein. Approval by NSC of the Development and Construction Budget will constitute approval by NSC of any expenditures described therein and actions reasonably necessary to carry out such budget's expenditures. GIK will make its purchases and payments or authorizations therefor within the general outlines, specifications, and estimated amounts as set forth in such budget.

B.     Reports.    GIK will render to NSC on or before the 15th day of each calendar month a statement of all moneys disbursed in the preceding calendar month in connection with the performance of GIK's duties hereunder. GIK agrees to install and maintain at all times, an adequate system of accounting including recording of all receipts and disbursements in connection with the performance of GIK's duties hereunder and agrees that NSC may examine and audit such accounting records at all reasonable times and after reasonable notice. Each monthly statement rendered by GIK hereunder will be submitted with such supporting data as may be reasonably required by good accounting practice.

GIK will keep all books of account and other records including, without limitation, records relating to the cost of construction and construction advances. Such books and records will be available for inspection and copying by NSC at reasonable times and after reasonable notice.

C.     Operating Accounts.    NSC will maintain one or more bank accounts established in NSC's name for the Project and/or each Phase (each, an "**Operating Account**"). NSC will authorize representatives of GIK approved by NSC to draw on the Operating Accounts in order to pay the Development Fee and other expenses set forth in Article 5. GIK's authority to draw against the Operating Accounts may be terminated at any time by NSC without notice to GIK.

## ARTICLE 5     PROJECT MANAGEMENT FEE; PAYMENT AND FUNDING OF EXPENSES

A.     Project Management Fee.    NSC agrees to remit to GIK a fee (the "**Project Management Fee**") as follows:

(i) for the period commencing on the date of this Agreement and continuing until the earlier of (a) the closing and funding of construction financing for the first Phase of the Project or (b) NSC's receipt of proceeds from the pre-sale of residential units within the first Phase of

the Project, NSC will remit to GIK a fee in the amount of US$250,000 per month, or such other amount as may from time to time be mutually agreed upon by NSC and GIK; and (ii) thereafter, NSC will remit to GIK an amount equal to three percent (3%) of the ProjectCosts , as defined in 5(b) below, incurred in connection with the Project and each applicable Phase.  NSC and GIK acknowledge and agree that the amount of the Project Management Fee set forth in clause (i) of the immediately preceding sentence is intended to equal the sum of GIK's overhead and operating expenses (as described in Article 5B), plus three percent (3%) thereof.  To the extent that, in any month, the amount of GIK's actual overhead and operating expenses, plus three percent (3%) thereof, differs from the amount set forth in clause (i), NSC and GIK shall make an appropriate adjustment, on a quarterly basis or as often as the parties otherwise agree, to the Development Fee paid pursuant to such clause; provided, however, that GIK from time to time may request that NSC make a special payment to fulfill GIK's obligations incurred in connection with its performance of the Work in the event GIK does not have the sufficient net cash balance to fulfill such obligations.

B.    Project Costs.  As used herein, the term **"Project Costs"** means all so-called "hard" and "soft" costs, including, without limitation, overhead expenses (including, without limitation, costs and expenses incurred with maintaining an on-site field office (including, without limitation, costs and expenses relating to telephone and facsimile charges and tolls, trailer rental, photocopying, courier or delivery services) rent, utilities, insurance,   the costs of GIK's employees (including salaries and fringe benefits), the rental payments with respect to fixed assets that are necessary for and dedicated to the performance of the Work, and similar costs), operating expenses (including, without limitation, travel and entertainment expenses incurred by GIK employees, marketing and promotion (including international marketing and promotion) expenses, and consulting and legal fees), land acquisition costs (including, without limitation, site improvement costs, which include, without limitation, costs associated with obtaining permits, approvals, boundary, geological and topographical surveys, and preparation of site plans), architectural and engineering costs, construction costs and construction loan interest incurred in connection with the Project and each Phase, but excluding the Project Management Fee; provided, however, that to the extent fees for architectural and engineering services do not relate to a specific Sub-Project, such fees shall not be included within the definition of Project Costs for purposes of computing the Project Management Fee; provided further, however, that the acquisition cost of land shall not be considered a Project Cost until such land or portion thereof is transferred to a Sub-Project Owner (and at such time, the land acquisition cost for purposes of computing the Project Management Fee shall equal the Sub-Project Owner's purchase price for such land or portion thereof).

C.     Advance of Funds for Sub-Project and Other Costs.   NSC and GIK acknowledge and agree that until construction financing has been secured for a Sub-Project, NSC may advance funds, as necessary, to a Sub-Project Owner on terms and conditions agreed to by NSC and the Sub-Project Owner to fund the Project Costs of, and the Project Manageement Fee payable with respect to, a Sub-Project.   NSC further agrees to advance or loan funds to GIK for the purpose of establishing overseas marketing offices (including, without limitation, in New York, United States), provided, any such loan shall be repayable from Project Management Fees owed hereunder.

D.     Payment of Project Costs and Project Management Fee.   The Development and Construction Budget for each Phase, as approved by NSC and GIK pursuant to subparagraph A of Article 4, will include the amount of the Project Management Fee for such Phase and a schedule for payment of the Project Management Fee for such Phase to GIK.   Unless otherwise provided in an approved Development and Construction Budget, the Project Management Fee shall be paid on or before the tenth (10th) day of each month, in arrears.   Pursuant to subparagraph C of Article 4, GIK will be permitted to draw on the Operating Accounts to pay the Project Management Fee and to pay all *bona fide* expenditures, within the applicable Development and Construction Budget approved by NSC, payable to (i) third parties providing goods or services in connection with the Project or a Phase and shown on the monthly reports submitted by GIK pursuant to subparagraph B of Article 4 and (ii) GIK for its overhead and operating expenses (as described above,) and shown on the monthly reports submitted by GIK pursuant to subparagraph B of Article 4.   Expenditures payable to third parties (or related parties, as expressly provided in subparagraph 7) shall include, without limitation:

1.     Costs payable to third parties in connection with the maintenance and preparation of accounts, records, books, reports, audits and other statements relating to the Project or a Phase.

2.     Costs of utilities for the Project or a Phase.

3.     Costs payable to third parties for photocopying, data processing services, telephone and facsimile charges and tolls, and mail, courier and delivery services relating to the Project or a Phase.

4.     Costs and expenses payable to third parties incurred in connection with any litigation involving NSC (including the cost of any investigation with respect thereto and preparation therefor) and the amount of any judgment or settlement paid in connection therewith.

5.      Costs and expenses payable to third parties incurred in compliance with permits and approvals relating to the Project or a Phase.

6.      Costs and expenses incurred in connection with the retention of third party consultants and experts to assist GIK in connection with supervising the design and construction of the Project and each applicable Phase.

7.      Costs and expenses incurred in connection with the retention of consultants to assist GIK in connection with the marketing or promotion (including international marketing or promotion) of the Project or a Phase, which consultants may be third parties or parties related to GIK.

8.      Debt service under any financing of the Project and each applicable Phase.

9.      All other costs and expenses that are paid by GIK for providing services in connection with the Project or a Phase or that are expenses of NSC and paid by GIK on behalf of NSC, to the extent expressly identified in this Agreement or in any approved budget as a cost of NSC, the Project or a Phase.

## ARTICLE 6      SUBMISSION OF DELIVERABLES

All documents submitted by GIK to NSC and by NSC to GIK pursuant to this Agreement will be in English.

## ARTICLE 7      CANCELLATION OR TERMINATION OF AGREEMENT

A.      This Agreement may be cancelled or terminated by mutual agreement of NSC and GIK, and, subject to compliance with the provisions of this Article 7, this Agreement may also be cancelled or terminated as follows:

1.      If NSC or GIK has committed a material breach of this Agreement, and it is therefore deemed that the purpose of this Agreement cannot be accomplished, the non-defaulting party may terminate this Agreement;

2.      If any license or registration of either party necessary for the performance of obligations pursuant to this Agreement, or, in the case of NSC, the development, construction or ownership of the Project, is cancelled by a competent administrative authority or such party is forced to cease its business by such authority, the other party may terminate this Agreement;

3.      If either party is wound up or dissolved, or any other equivalent event occurs, the other party may terminate this Agreement;

4.      If it is impossible to continue to perform the Work for a period longer than one hundred twenty (120) days due to an act of God, war or other force majeure event, either party may terminate this Agreement;

B.      If any of the above events occurs, the terminating party will provide written notice thereof to the other party within fourteen (14) days.

C.      If a party wishes to cancel or terminate this Agreement pursuant to any of the provisions of subparagraph A above, such party will allow the other party to cure such breach by giving fourteen (14) days' notice to the other party.    If the party who is in receipt of such notice fails to cure such breach within fourteen (14) days of the receipt of such notice, this Agreement will be cancelled or terminated immediately when such fourteen (14) days have passed.

D.      In the event of the termination of this Agreement, through fault of NSC, NSC will compensate GIK for all services provided and all expenses incurred through the effective date of termination.    Upon payment of such costs, NSC will be released from obligation for payment of balance of the Project Management Fees related to this contract.

E.      Termination of this Agreement will not affect the right of either party to assert a cause of action or legal claim existing at the time of such termination, or arising from an event occurring prior to or in connection with such termination.

## ARTICLE 8      INDEMNIFICATION

NSC agrees to defend with counsel chosen by NSC and reasonably acceptable to GIK, save harmless, and indemnify GIK from all claims, actions, obligations, liabilities, costs, expenses and fees arising out of or in connection with the development of the Project or a Phase and from all claims for liability for injuries to persons and property or death suffered by any employee or other persons whomsoever in connection therewith, subject in each instance to such obligations as may be imposed by law upon GIK as to the proper performance of its duties hereunder and except to the extent of GIK's gross negligence or GIK's indemnification of NSC as provided in the next paragraph.

GIK agrees to defend with counsel chosen by GIK and reasonably acceptable to NSC, save harmless, and indemnify NSC from all claims, actions, obligations, liabilities, costs, expenses and fees to the extent arising out of the gross negligence or the willful misconduct of GIK or any of its officers or directors or members in connection with the development of the Project or a Phase, including without limitation claims for liability for injuries to persons and property or death suffered by any employee or other persons whomsoever.    It is agreed that GIK

shall not be liable under the indemnification set forth in this Article 8 in the case of any error of judgment or for any mistake of fact or law or for anything which it may do or refrain from doing hereafter where GIK in good faith determined that its action or inaction was in the interest of NSC or the Project (or a Phase) or where GIK in good faith relied on the advice of counsel or professional consultants, except to the extent of GIK's gross negligence or willful misconduct. GIK shall not be liable for unusual difficulty or inability in obtaining services or supplies, labor difficulties or causes reasonably beyond GIK's control.

## ARTICLE 9    DISPUTES

A.    In the event of any dispute between the parties with respect to the interpretation of this Agreement, the occurrence of any events not specified in this Agreement, or any other disputes arise out of or in relation to this Agreement, NSC and GIK will attempt in good faith to resolve such disputes through amicable discussion between the parties.

B.    If any dispute cannot be settled after good faith attempts to do so continuing for sixty (60) days, the dispute will be submitted to arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.   The arbitration award rendered by the arbitrators will be final and binding upon both parties concerned.

## ARTICLE 10    FORCE MAJEURE

Neither party will be liable to the other party for non-performance or delay in performance of any of its obligations under this Agreement due to legitimate causes beyond its control including fire, flood, strikes, labor disputes, or other industrial disturbances, unavoidable accidents, government regulations, government actions, acts of war or military incursion.   Upon the occurrence of such a force majeure condition, the affected party will (i) immediately notify the other party in writing of such occurrence with as much specificity as possible, (ii) promptly inform the other party of any further development or change in such condition of force majeure, and (iii) perform its obligations under this Agreement with due haste unless this Agreement has previously been terminated by mutual agreement of both parties.

## ARTICLE 11    GOVERNING LAWS

This Agreement will be governed by the laws of the Republic of Korea.

about:blank                                                                    2/20/2019

## ARTICLE 12     NOTICE AND COMMUNICATION

A.     Any notices and other communication to be sent with regard to the Agreement will be in writing in English and may be personally delivered or transmitted by mail, e-mail or facsimile to the other parties at the addresses set forth above.

B.     If written notice cannot be provided, the notice will be provided orally and then in writing within two (2) days of such oral notice.

## ARTICLE 13     EFFECTIVENESS AND VALIDITY OF THIS AGREEMENT

This Agreement will be effective as of the date of the Agreement first written above.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, NSC and GIK have executed this Agreement effective as of the date first written above.

NSC:                    **NEW SONGDO CITY DEVELOPMENT LIMITED LIABILITY COMPANY**

By: _____

John B. Hynes, III

Representative Director, on behalf of the Board of Directors

GIK:                    **GALE INTERNATIONAL (KOREA), LLC**

By: _____

John B. Hynes, III

Representative Director/President and Chief Executive Officer

Witnessed:              **POSCO ENGINEERING & CONSTRUCTION CO., LTD.**

By: _____

Yong-Kyung Cho

Senior Executive Vice President