# Exhibit F

*Execution Copy*

## UNIT PLEDGE AGREEMENT

in connection with the

Two Hundred Ninety Billion Won (KRW 290,000,000,000)
Facility Agreement dated December 16, 2013,

Three Hundred Billion Won (KRW 300,000,000,000)
Facility Agreement dated December 16, 2013,

One Hundred Billion Won (KRW 100,000,000,000)
Facility Agreement dated December 16, 2013,

One Hundred Ten Billion Won (KRW 110,000,000,000)
Facility Agreement dated December 16, 2013,

One Hundred Ten Billion Won (KRW 110,000,000,000)
Facility Agreement dated December 16, 2013,

Three Hundred Sixty Billion Won (KRW 360,000,000,000)
Facility Agreement dated December 16, 2013,

Four Hundred Billion won (KRW 400,000,000,000)
Facility Agreement dated December 16, 2013,
and
Six Hundred Billion won (KRW 600,000,000,000)
Facility Agreement dated December 16, 2013,

**NSC INVESTMENT, LLC**
**POSCO ENGINEERING & CONSTRUCTION CO., LTD.**

*- Pledgors -*

**THE FINANCIAL AND OTHER INSTITUTIONS**
**LISTED HEREIN AS PLEDGEES**

*- Pledgees -*

December 18, 2013



# TABLE OF CONTENTS

SECTION 1. INTERPRETATION ...................................................................................................1

SECTION 2. ESTABLISHMENT OF PLEDGE .................................................................................2

SECTION 3. PLEDGORS' REPRESENTATIONS AND WARRANTIES ...........................................2

SECTION 4. PLEDGORS' OBLIGATIONS .....................................................................................3

SECTION 5. DIVIDENDS AND VOTING RIGHTS ..........................................................................4

SECTION 6. ENFORCEMENT BY PLEDGEES................................................................................4

SECTION 7. ASSIGNMENT ..........................................................................................................5

SECTION 8. FURTHER ASSURANCE ............................................................................................5

SECTION 9. TERMINATION AND RELEASE OF SECURITIES ......................................................5

SECTION 10. MISCELLANEOUS ..................................................................................................6

**SCHEDULE**



Schedule I        List of Pledgees
Schedule II       List of Facility Agreements
Schedule III      Details of Units

**THIS UNIT PLEDGE AGREEMENT** (this **"Agreement"**) is entered into as of this December 18, 2013, by and among:

(i)     **NSC INVESTMENT, LLC ("NSCI")**, a company duly incorporated and existing under the laws of the State of Delaware with its principal place of business at 540 Madison Avenue, 38th Floor, New York, New York, 10022, as pledgor;

(ii)    **POSCO ENGINEERING & CONSTRUCTION CO., LTD. ("POSCO E&C")**, a company duly incorporated and existing under the laws of the Republic of Korea (**"Korea"**) with its registered office at 568-1, Goedong-dong, Nam-gu, Pohang, GyeongBuk, Korea as pledgor (POSCO E&C and NSCI, individually, a **"Pledgor"** and collectively, the **"Pledgors"**); and

(iii)   **THE FINANCIAL AND OTHER INSTITUTIONS** listed in Schedule I hereto, as pledgees (the **"Lenders"**).

Capitalized terms not defined herein shall have the respective meanings set forth in a Facility Agreement (as defined in Schedule II hereto).

## RECITALS

**WHEREAS:**

A.      By the Facility Agreements listed in Schedule II (the **"Facility Agreements"**), the Lenders have agreed, subject to and upon the terms and conditions contained therein, to extend term loan facilities to the Borrower in order to to refinance the existing debts of the Borrower in relation to the Project and to finance the financing costs in connection with the Facility Agreements and other expenses, working capital and taxes of the Borrower;

B.      NSCI and POSCO E&C are the legal and beneficial owners of 70.1% and 29.9%, respectively, of the capital stock of and in the Borrower (the **"Units"**, the details of which are specified in the Schedule III hereto);

C.      For the purposes of securing the Secured Obligations, each Pledgor desires to grant the Pledgees a pledge of the Units pursuant to the terms and conditions contained herein; and

D.      This is the Unit Pledge Agreement as defined and referred to in the Facility Agreements.

**NOW, THEREFORE**, it is agreed as follows:

## SECTION 1.   INTERPRETATION

Words and expressions defined in the Facility Agreements shall, unless otherwise defined

herein or the context otherwise requires, have the same meaning when used in this Agreement. References to any agreement or document shall be construed as references to such agreement or document as varied, amended, novated or supplemented from time to time.   In addition thereto, as used in this Agreement:

"**Pledgee**" means each of the Lenders and shall include its respective successors, transferees and assigns.

"**Secured Obligations**" means any and all moneys, liabilities and obligations from time to time due, owing and/or payable to the Lenders by the Borrower pursuant to the Facility Agreements.

## SECTION 2.    ESTABLISHMENT OF PLEDGE

2.1    The Pledgors hereby pledge by way of first priority pledge (the **"Pledge"**), all of their respective rights, titles, interests and benefits in the Units to the Pledgees, and the Pledgees hereby accept such Pledge (*jilkwon*) of the Units, as collateral security for the due and punctual payment, performance and discharge in full of the Secured Obligations.

2.2    The Pledgors shall procure and cause the Borrower to effect entry of the name and address of each of the Pledgees as pledgee in the register of unitholders of the Borrower.



## SECTION 3.    PLEDGORS' REPRESENTATIONS AND WARRANTIES

Each Pledgor hereby represents and warrants to the Pledgees that as of the date hereof:

(a)    it owns the number of units set forth beside its name in Schedule III hereto ("its Units" as used herein shall refer to the Units described beside a Pledgor's name in Schedule III hereto), and such units were duly authorized and issued and are fully paid-in in the amount of KRW 22,280,000,000 and non-assessable, and such units, together with those of the other Pledgor, constitute all of the issued and outstanding units of any class of stock issued by the Borrower;

(b)    it has full rights, titles, interests and benefits in its Units free and clear of all encumbrances, except with respect to 28.816% of the Units held by NSCI which are subject to a second priority pledge granted to POSCO E&C pursuant to the Unit Pledge Agreement dated as of August 3, 2011 (the "**POSCO E&C Second Pledge**");;

(c)    except for the POSCO E&C Second Pledge granted by NSIC, it has not pledged, assigned or otherwise transferred to any third party any interest in its Units (other than the Pledge pursuant to this Agreement);

(d)     it is duly organized, validly existing under the laws of the jurisdiction of its organization, has all requisite power and authority to carry on its business as now conducted and is qualified to do business in every jurisdiction where such qualification is required;

(e)     it has all necessary corporate power, authority and legal right to execute, deliver and perform its obligations under this Agreement;

(f)     it has taken all steps necessary to authorize its execution, delivery and performance of this Agreement;

(g)     it has obtained all authorization, approvals and consents from all the governmental authorities in any jurisdiction or any third parties in order to execute, deliver and perform this Agreement, including the consent of Woori Bank under the Fiscal Agency Agreement in relation to the U.S. $50,000,000 Floating Rate Notes issued by The Gale Investments Company, L.L.C. on August 5, 2011, which the Borrower shall obtain on or before the date hereof;

(h)     the execution, delivery and performance of this Agreement have been duly authorized by it, and are not in conflict with any provision of law, its Articles of Incorporation, or any other indenture, agreement or undertaking by which it is bound;

(i)     this Agreement constitutes the legal, valid and binding obligations of it enforceable in accordance with the terms of this Agreement, subject, as to enforceability, to laws relating to bankruptcy, insolvency, liquidation, reorganization, court schemes, moratoria, administration and other laws generally affecting the rights of creditors;

(j)     this Agreement is, or will when executed and deliverable be, in proper legal form under the law of Korea for the enforcement thereof against it under such law, and all formalities required in Korea for the validity and enforceability of this Agreement have been or will be accomplished; and

(k)     it is subject to civil and commercial law with respect to its obligations under this Agreement, and the execution, delivery and performance by it constitute private and commercial acts rather than public or governmental acts.

## SECTION 4.    PLEDGORS' OBLIGATIONS

4.1     Each Pledgor shall do all such acts as may be necessary to preserve the Pledge of its Units including without limitation, indicating in the unitholders' registry of the Borrower that all of its Units have been pledged to the Pledgees and not to remove such indication, except with the prior written consent of the Pledgees.

4.2     Except for the POSCO E&C Second Pledge granted by NSIC, each Pledgor shall not assign, transfer, sell, further pledge or otherwise encumber its Units.



4.3   In any circumstances giving rise to the creation of additional units in the Borrower (including, without limitation, a capital increase), the Pledgors shall promptly pledge to the Pledgees such additional units by the same way as set forth in this Agreement and immediately cause the Borrower to register any such additional units on the register of unitholders and do or cause the Borrower to do all such acts at the reasonable request of the Pledgees as may be necessary to indicate that such additional units have been pledged to the Pledgees.   Upon registration of the Pledge on the additional units, the Pledgors shall immediately submit to the Pledgees an amended unitholders' registry showing the establishment of a pledge on such additional units.

4.4   The Pledgors shall maintain their unitholding of 100% of the total issued and outstanding units of the Borrower throughout the term of this Agreement.

## SECTION 5.   DIVIDENDS AND VOTING RIGHTS

At any time before the acceleration of loan (the "Acceleration") under a Facility Agreement has occurred, each Pledgor shall be entitled to exercise in its sole discretion, with respect to its Units, all rights and powers, conferred by statute or otherwise, upon an absolute owner of its Units and to receive all dividends, interest, principal or other payments of money declared or made with respect to its Units in accordance with the terms of a Facility Agreement, *provided*, that after the occurrence of such an Acceleration, each Pledgor may exercise or cause to be exercised in respect of any Units any voting rights and rights to receive dividends, interest, principal or other payments of money, as the case may be, forming a part of the Units and rights conferred on or exercisable by the bearer or holder thereof in its capacity as such.   For the avoidance of doubt, the Borrower shall not declare or pay any dividend whether in cash or in-kind or in any form whatsoever as long as there remains any outstanding amount of the Loans and/or other monetary obligation of the Borrower payable to the Pledgees under the Facility Agreements, except as otherwise permitted under the Facility Agreements.

## SECTION 6.   ENFORCEMENT BY PLEDGEES

6.1   If the Acceleration under a Facility Agreement has occurred, the Pledgees shall become forthwith entitled, as and when it sees fit upon mutual agreement of the Lenders, to put into force and to exercise all or any of the rights and power possessed by the Pledgees as pledgees of the Units, including without limitation, the power to:

   (a)   exercise, to the maximum extent permitted by law, all voting, consensual and other powers of ownership pertaining to the Units as if the Pledgees were the sole and absolute owners thereof (and each Pledgor agrees that at such time and upon the Pledgees request it will take all such actions as may be appropriate to give effect to such right);

   (b)   demand, sue for, collect or receive, in the name of the Pledgors or any of the Pledgors, any money or property at any time payable or receivable on account of or in exchange for any of the Units, but shall be under no obligation to do so;



- 4 -

and

(c)     assign, sell or otherwise dispose of the Units to such person, at a public or a private sale, and upon such terms as the Pledgees may reasonably determine and any Pledgee or anyone else may be the purchaser, Pledgee or recipient of any or all of the Units and thereafter hold the same absolutely, free from any claims or rights whatsoever, including any rights of redemption, of each Pledgor.

6.2     If the proceeds of such sale, collection or other realization of all or any part of the Units pursuant to Section 6.1 hereof are insufficient to cover the costs and expenses of such realization and the payment in full of the Secured Obligations, the Borrower shall remain liable for such deficiency.   In the event there is any surplus after payment of the costs and expenses of such realization and the satisfaction in full of the Secured Obligations, the Pledgees shall immediately return such surplus to the Pledgors.

6.3     The Pledgees shall incur no liability as a result of the sale of the Units or any part thereof, at any private sale pursuant to Section 6.1 hereof.  Each Pledgor hereby waives any claims against any Pledgee arising by reason of the fact that the price at which the Units have been sold at such private sale may be less than the price at which it could have been sold otherwise.

6.4     The proceeds of any sale or other realization of all or any part of the Units shall be applied by the Pledgees in accordance with Section 4.04 of a Facility Agreement.



## SECTION 7.   ASSIGNMENT

This Agreement and the Pledge created hereunder shall be binding upon and inure to the benefit of the Pledgors and the Pledgees and their respective successors and assigns.   Any Pledgee may, in accordance with a Facility Agreement and applicable laws, at any time assign all or any part of its rights or obligations hereunder to any party (each an **"Assignee Pledgee"**).   The parties hereto agree that to the extent of any assignment, the Assignee Pledgee shall be deemed to have the same rights and benefits under this Agreement as it would have had if it were a signatory Pledgee hereunder.   No Pledgor may assign any of its rights or obligations hereunder without the prior written consent of the Pledgees.

## SECTION 8.   FURTHER ASSURANCE

Each Pledgor agrees that at any time and from time to time upon the written request of the Pledgees, it shall promptly and duly execute and deliver any and all such further instruments and documents and take such further action as the Pledgees may reasonably request in order to obtain the full benefit of this Agreement and the rights and powers herein granted.

## SECTION 9.   TERMINATION AND RELEASE OF SECURITIES



The term of this Agreement shall begin on the date of this Agreement and end on the date on which all Secured Obligations shall have been unconditionally and irrevocably paid and discharged in full, the Commitments of the Lenders under a Facility Agreement between the Pledgor and the Pledgees shall have expired or been terminated. Upon termination of this Agreement, the Pledgees shall at the request and cost of the Pledgors promptly release and discharge this Agreement and the Pledge created hereunder and return the unit certificate to the Pledgors and give such notices and take other actions as may be reasonably requested to effectuate such discharge of security.

## SECTION 10.   MISCELLANEOUS

10.1   Notices.   All notices, demands and other communications provided for herein shall be made in accordance with a Facility Agreements.

10.2   Severability.   If any of the provisions of this Agreement shall contravene any law or regulation or be held invalid, this Agreement shall be construed as if not containing those provisions, and the rights and obligations of the parties hereto shall be construed and enforced accordingly.

10.3   Amendments, Changes and Modifications.   This Agreement shall not be amended, changed, modified, altered or terminated unless the prior written approval of the Pledgors (with any consent of the Pledgees required by a Facility Agreement) is obtained.   This Agreement shall not be amended by an oral agreement.

10.4   Counterparts.   This Agreement may be executed in multiple counterparts, each of which, when executed, shall constitute an original but all of which together shall constitute one and the same instrument.

10.5   Heading.   Headings and titles herein are for convenience only and shall not affect the construction or interpretation of this Agreement.

10.6   Entire Agreement.   This Agreement, together with the Facility Agreements, is intended by the parties as the written final expression of each party's obligations and rights in connection with the Pledge of the Units and supersedes all prior and contemporaneous understandings or agreements concerning the subject matter hereof.

10.7   Conflict.   In the case of a conflict between the provisions of this Agreement and the provisions of a Facility Agreement, a Facility Agreement shall prevail.

10.8   Governing Law and Jurisdiction.   This Agreement and the security created pursuant hereto shall be governed by the laws of Korea in all respects, including matters of construction, validity and performance.   The parties hereto agree that any legal action or proceeding arising out of or relating to this Agreement may be brought in the Seoul Central District Court in Korea and the Pledgors hereby irrevocably submits to the non-exclusive jurisdiction of such court.

(Signature page to follow)



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

Pledgors:

**NSC INVESTMENT, LLC**

By: _____
Name:
Title:

**POSCO ENGINEERING & CONSTRUCTION CO., LTD.**

By: _____
Name:
Title:

Pledgees:

**NEW CITY DREAM I CO., LTD.**

By: _____
Name:
Title:

**NEW CITY DREAM II CO., LTD.**

By: _____
Name:
Title:

**NEW CITY DREAM III CO., LTD.**

By: _____
Name:
Title:

**INVEST WORLD PARK CO., LTD.**

By: _____

Name:

Title:



**DOUBLE ONE III LIMITED LIABILITY
COMPANY**

By:  _____

서울시 영등포구 여의대로 70(여의도동)

Name: 더블원제삼차 유한회사

Title: 이 사 장 주 철

**DOUBLE FIRST 13 ABS SPECIALTY LIMITED LIABILITY COMPANY**

서울시 중구 을지로 66(을지로2가)

더블퍼스트13유동화전문 유한회사

By:

Name: 사   이   은
Title:

**DOUBLE FIRST 14 ABS SPECIALTY LIMITED
LIABILITY COMPANY**

서울시 중구 을지로 66(을지로2가)

더블퍼스트14유동화전문 유한회사

By: _____

Name: 사 이 은

Title:

**DOUBLE FIRST 15 ABS SPECIALTY LIMITED
LIABILITY COMPANY**

By:

Name:

Title:

**DIONEPLUS CO., LTD.**



By: _____

Name:

Title:

**SMART IBD CO., LTD.**

By:  _____

Name:

스마트아이비디 주식회사

서울특별시 영등포구 여의대로 00(여의도동)

대표자 사내이사 이 옥 란

**SINGED I CO., LTD.**

By: _____

     Name:

     Title:

**TITAN I CO., LTD.**

By:  _____

Name:
Title:

**PANAMERA I CO., LTD.**

By: _____

Name:

Title:

**ABLE DCM II CO., LTD.**

By: _____
       Name:
       Title:

Meritz Fire & Marine Insurance Co., Ltd.

By: _____

Name:

Title:

서울시 강남구 강남대로 382(역삼동)

메리츠화재해상보험주식회사

대표이상 김 용 범

**DOUBLE ONE I LIMITED LIABILITY COMPANY**

By: _____

Name:

Title:

**DOUBLE ONE II CO., LTD.**

By: _____
Name:
Title:

**GLOBAL DREAM I LIMITED LIABILITY COMPANY**

By: _____

Name:

Title:

**GLOBAL DREAM II LIMITED LIABILITY COMPANY**

By: _____

Name:

Title:

**GLOBAL DREAM III LIMITED LIABILITY COMPANY**

By: _____

Name:

Title:

**SCHEDULE I**

**List of Pledgees**

| Agreement | Lenders/Pledgees |
|---|---|
| Facility Agreement (Package 1) | • New City Dream I Co., Ltd.<br>• New City Dream II Co., Ltd.<br>• New City Dream III Co., Ltd. |
| Facility Agreement (Package 2) | • Invest World Park Co., Ltd.<br>• Double One III Limited Liability Company |
| Facility Agreement (Package 3 – F15 Block) | • Double First 15 ABS Specialty Limited Liability Company |
| Facility Agreement (Package 3 – F13 Block) | • Double First 13 ABS Specialty Limited Liability Company |
| Facility Agreement (Package 3 – F14 Block) | • Double First 14 ABS Specialty Limited Liability Company |
| Facility Agreement (Package 4) | • Dioneplus Co., Ltd.<br>• Smart IBD Co., Ltd.<br>• Singed I Co., Ltd.<br>• Titan I Co., Ltd.<br>• Panamera I Co., Ltd.<br>• Able DCM II Co., Ltd.<br>• Meritz Fire & Marine Insurance Co., Ltd. |
| Facility Agreement (Package 5) | • Double One I Limited Liability Company<br>• Double One II Co., Ltd |
| Facility Agreement (Package 6) | • Global Dream I Limited Liability Company<br>• Global Dream II Limited Liability Company<br>• Global Dream III Limited Liability Company |



## SCHEDULE II

### List of Facility Agreements

- A facility agreement (Package 1) dated as of December 16, 2013 (the **"Facility Agreement (Package 1)"**), made by and among New Songdo International City Development Limited Liability Company with its registered office at 6-1 Songdo-dong, Yeonsu-gu, Incheon as borrower (in such capacity, the **"Borrower"**), New City Dream I Co., Ltd., New City Dream II Co., Ltd. and New City Dream III Co., Ltd. as lenders, and POSCO E&C Co., Ltd as constructor, the lenders have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to two hundred ninety billion won (KRW 290,000,000,000);

- A facility agreement (Package 2) dated as of December 16, 2013 (the **"Facility Agreement (Package 2)"**), made by and among the Borrower, Kyobo Securities Co., Ltd., Daewoo Securities Co., Ltd., KB Investment & Securities Co., Ltd. and HI Investment & Securities Co., Ltd. as lenders, and POSCO E&C Co., Ltd as constructor, the lenders have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to three hundred billion won (KRW 300,000,000,000);

- A facility agreement (Package 3 – F15 Block) dated as of December 16, 2013 (the **"Facility Agreement (Package 3 – F15 Block)"**), made by and among the Borrower, Hyundai and Securities Co., Ltd., Kyobo Securities Co., Ltd., HI Investment & Securities Co., Ltd. and Eugene Investment & Securities Co., Ltd. as lenders, and POSCO E&C Co., Ltd as constructor, the lenders have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to one hundred billion won (KRW 100,000,000,000);

- A facility agreement (Package 3 – F13 Block) dated as of December 16, 2013 (the **"Facility Agreement (Package 3 – F13 Block)"**), made by and among the Borrower, Hyundai Securities Co., Ltd. as lender, and POSCO E&C Co., Ltd as constructor, the lender have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to one hundred ten billion won (KRW 110,000,000,000);

- A facility agreement (Package 3 – F14 Block) dated as of December 16, 2013 (the **"Facility Agreement (Package 3 – F14 Block)"**), made by and among the Borrower, Hyundai Securities Co., Ltd. and Meritz Securities Co., Ltd as lenders, and POSCO E&C Co., Ltd as constructor, the lender have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to one hundred ten billion won (KRW 110,000,000,000);

- A facility agreement (Package 4) dated as of December 16, 2013 (the **"Facility Agreement (Package 4)"**), made by and among the Borrower, Dioneplus Co., Ltd., Smart IBD Co., Ltd., Singed I Co., Ltd., Titan I Co., Ltd., Panamera I Co., Ltd. and Able DCM II Co., Ltd. as lenders, and POSCO E&C Co., Ltd as constructor, the lender have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to three hundred sixty billion won (KRW 360,000,000,000);

- A facility agreement (Package 5) dated as of December 16, 2013 (the **"Facility Agreement (Package 5)"**), made by and among the Borrower, Double One I Limited Liability Company and Double One II Co., Ltd as lenders, POSCO E&C Co., Ltd as constructor and KB Investment & Securities Co., Ltd. as an agent, the lender have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the



Borrower in the amount of up to four hundred billion won (KRW 400,000,000,000); and
- A facility agreement (Package 6) dated as of December 16, 2013 (the **"Facility Agreement (Package 6)"**), made by and among the Borrower, Global Dream I Limited Liability Company,,   Global Dream II Limited Liability Company and Global Dream III Limited Liability Company as lenders, POSCO E&C Co., Ltd as constructor and Korea Exchange Bank as an agent, the lender have agreed, subject to and upon the terms and conditions contained therein, to extend a term loan facility to the Borrower in the amount of up to six hundred billion won (KRW 600,000,000,000) (the Facility Agreement (Package 1), the Facility Agreement (Package 2), the Facility Agreement (Package 3 – F15 Block), the Facility Agreement (Package 3 – F13 Block), the Facility Agreement (Package 3 – F14 Block), the Facility Agreement (Package 4), the Facility Agreement (Package 5) and the Facility Agreement (Package 6), individually a **"Facility Agreement"** and collectively, the **"Facility Agreements"**)



**SCHEDULE III**

**Details of Units**

| Unitholder | Number of Units | Shareholding Ratio |
|---|---|---|
| NSC Investment, LLC | 3,123,656 | 70.1% |
| POSCO Engineering & Construction Co., Ltd. | 1,332,344 | 29.9% |

