CLIFFORD CHANCE US LLP

31 WEST 52ND STREET
NEW YORK, NY 10019-6131
TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

**Via ECF**

Hon. John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Direct Dial: +1 212 878 3140
E-mail: anthony.candido@cliffordchance.com

September 6, 2019

Re:   *NSC Investment, LLC and TGC/Korea Operating, LLC* v. *POSCO E&C*,
      19-cv-02498-JGK (S.D.N.Y.)

Dear Judge Koeltl:

In accordance with Section 2(B) of the Court's Individual Practices, we write on behalf of Defendant POSCO E&C ("POSCO") to request a pre-motion conference in anticipation of moving to dismiss the Amended Complaint (the "Complaint" or "Compl.") in the above captioned matter pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), and on grounds of *forum non conveniens*.

This dispute has its origins in a large-scale Korean government project to develop the New Songdo International Business District near Seoul, Korea to create a smart city and business center. Specifically, the City of Incheon initiated the project in 2001, including through the grant of certain development rights under Korean law. Incheon brought in POSCO — a Korean company — as the primary contractor and construction manager. Gale Investments Company, LLC — the parent of Plaintiffs NSC Investment, LLC and TGC/Korea Operating, LLC (collectively "Gale") — was brought in to provide financing and expertise relating to the performance of the project.

POSCO and Gale formed a Korean joint venture as a Korean *yuhan hoesa* (similar to a limited liability company), with a Joint Venture Operating Agreement governed by Korean law (the "JV Agreement"). (Compl. ¶¶ 29, 31.) The parties separately created another Korean company (Gale International Korea) to handle day-to-day operations pursuant to an operating agreement (the "GIK Agreement"), also governed by Korean law. (Compl. ¶¶ 36, 38.) Both the JV Agreement and the GIK Agreement (collectively the "LLC Agreements") have arbitration clauses, submitting disputes thereunder to arbitration in Singapore under the ICC Rules.

Ultimately several disputes arose between the parties under the LLC agreements, including (meritless) allegations by Gale that POSCO purportedly overcharged for construction work and that POSCO supposedly engineered that the joint venture default on certain loan obligations in order to seize and sell Gale's ownership interest in the joint venture. (Compl. ¶¶ 4-9) On March 14, 2019, Gale commenced an ICC arbitration claiming violations of the LLC Agreements, invoking the arbitration clauses in those contracts. (Compl. ¶ 1.)

The case filed in this Court **_arises under an entirely different agreement_**, a Unit Pledge Agreement, which does not have an arbitration clause. Specifically, the joint venture entered into six loan agreements with various Korean financial institutions (the "Loan Facility Agreements). (Compl. ¶ 59.) The Loan Facility Agreements are governed by Korean law and each contain an

exclusive jurisdiction clause in favor of the Seoul Central District Court in Korea.  In connection with those loan agreements, POSCO and Gale each pledged their units in the joint venture to the lenders as collateral for the loans.  (Compl. ¶ 60.)  Those pledges are governed by the Unit Pledge Agreement with the lenders.  The Unit Pledge Agreement is governed by Korean law, and contains a permissive jurisdiction clause in favor of the Korean courts.

The joint venture ultimately defaulted on two of the loans, and POSCO exercised its right under the Unit Pledge Agreement to pay off the balances and assume the position as lender Pledgee under the relevant Loan Facility Agreements.  (Compl. ¶ 80.)  POSCO then sold Gale's pledged units, *qua* lender Pledgee (initially in a Korean sales process and ultimately to Hong Kong buyers) to satisfy the loans.  Gale alleges that the sale was below market value and that accordingly POSCO, *qua* lender Pledgee, failed to return a supposed surplus value to Gale after repaying any outstanding amounts on the loans.  (Compl. ¶ 112.)

The Complaint asserts two counts.  In Count I, Gale seeks a declaration that its claim under the **Unit Pledge Agreement** should be submitted to the pending ICC arbitration on the basis of the arbitration clauses in the **LLC Agreements**.[1]  In Count II, asserted in the alternative, Gale asserts its breach of contract claim under the Unit Pledge Agreement.  These claims should be dismissed in their entirety on several grounds.

***First***, Count I should be dismissed for lack of subject-matter jurisdiction for the simple reason that "if a valid [arbitration] exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  Here, Gale relies upon the arbitration clauses in the LLC Agreements, under which the parties agreed to be bound by the ICC Rules.  The ICC Rules "expressly provide for the International Court of Arbitration ("ICA") to resolve in the first instance any disputes about its own jurisdiction," and, for that reason, the Second Circuit has held that agreements incorporating the ICC Rules "clearly and unmistakably evidence[] the parties' intent to arbitrate questions of arbitrability."  *Shaw Group v. Triplefine Int'l*, 322 F.3d 115, 125 (2d. Cir. 2013).

***Second***, POSCO is not subject to personal jurisdiction here on either of Gale's claims.  The Complaint makes the conclusory assertion that POSCO "transacts business in New York, and this claim arises from those business transactions."  (Compl. ¶ 20 (citing N.Y.C.P.L.R. § 302(a)(1).)  But when it comes to specifics, all Gale can manage is the vague allegation that **Gale** entities were based in New York and did some work on the joint venture from here (Compl. ¶ 44) and that POSCO representatives came to New York for some meetings a few times, including a settlement meeting.  (*Id.*)  But Gale's breach of contract claim is not alleged to arise out something that happened in these alleged meetings and those purported contacts "are irrelevant to [its] declaratory judgment action," which "would exist regardless . . . ."  *Beacon Enterprises v. Menzies*, 715 F.2d

---

[1]  Gale also appears to be seeking a declaration that the claims under the LLC Agreement already being arbitrated must be submitted to arbitration.  (*See* Compl. ¶ 108.)  That aspect of the claim is moot because POSCO already has answered the Request for Arbitration and the arbitration proceeding is pending.  In any event, it also should be dismissed for the reasons stated *infra*.

757, 765 (2d Cir. 1983). Gale's appeal to Fed. R. Civ. P. 4(k)(2) (Compl. ¶ 21) is similarly unavailing. Rule 4(k)(2) applies only to federal claims (and therefore not Count II), and in any event, requires relevant contacts with the United States as a whole, none of which are alleged.

**Third**, the lack of relevant contacts in New York also makes venue improper here. "In determining whether venue is proper for a breach of contract action under § 1391(b)(2), courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc. v. Quality Prods*. 907 F. Supp. 752, 757-758 (S.D.N.Y. 1995). Here, none of those relevant events took place in New York.

**Fourth**, the Complaint also should be dismissed on *forum non conveniens* grounds because "[a] district court should dismiss a complaint where, on balance, the resolution of the matter in an adequate alternative forum would be more convenient for the parties and courts and more just." *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 221-222 (S.D.N.Y. 2007). Here, the ICC tribunal (for Count I) and/or the Seoul District Court provide an adequate alternative forum, the misconduct alleged by Gale is in Korea and the majority of evidence is located there, and the case will be resolved through the application of Korean law. Korea has a stronger interest in the dispute between the parties which relates to a Korean government development project and the sale of units in a Korean joint venture company.

**Fifth**, even were this Court to assume subject matter jurisdiction over Count I here (and it should not, *see supra*), Count I should be dismissed for failure to state a claim because claims under the Unit Pledge Agreement are not subject to arbitration. The Unit Pledge Agreement was a separate agreement with third-party lenders (entered into after the LLC Agreements) and contains no arbitration clause; indeed, it expressly contemplates litigation in the Korean courts.

**Sixth**, Count II also should be dismissed under Rule 12(b)(6) because Gale expressly waived the claim it purports to assert here, *i.e.*, that POSCO qua Pledgee, sold Gale's units below market value. Specifically, Section 6.3 of the Unit Pledge Agreement expressly provides that:

> The Pledgees shall incur no liability as a result of the sale of the Units or any part thereof, at any private sale pursuant to Section 6.1 hereof. Each Pledgor hereby waives any claims against any Pledgee arising by reason of the fact that the price at which the Units have been sold at such private sale may be less than the price at which it could have been sold otherwise.

Under Korean law, that clause effects a waiver of precisely the sort of claim Gale asserts here and requires dismissal of Count II.

*     *     *

For all the foregoing reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,

  /s/ Anthony M. Candido____
Anthony M. Candido